UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VOUTY THOL,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>DOUG WADDINGTON,<br><br>　　　　Respondent. | Case No. C05-5373RJB<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**January 6th, 2006** |

INTRODUCTION AND SUMMARY CONCLUSION

This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.  The court has reviewed the record and finds the only claim to be without merit.  This petition should be **DISMISSED WITH PREJUDICE.**

Petitioner, Vouty Thol was convicted following a jury trial in Cowlitz County of first degree attempted murder.  (Dkt. # 19, Exhibit 5, page 8).  Petitioner was sentenced to 280 months.  (Dkt. # 19, Exhibit 1).

FACTS

The Court of Appeals summarized the facts of Mr. Thol's case as follows:

REPORT AND RECOMMENDATION - 1

> On March 2, 1997, about 2 a.m., three carloads of young men went to the home of Bunny Vath. Some of the young men fired 18 shots at Vath when he opened the door. Although wounded in the chest and abdomen, Vath survived the attack.
>
> Within minutes of the shooting, the Cowlitz County Police apprehended one carload of the young men as they tried to escape. They apprehended the others in the ensuing days.
>
> In June 1997, a jury convicted four defendants of first degree assault and, in the alternative, first degree attempted murder. Another two were charged and convicted of first degree assault only. (Footnotes omitted).

(Dkt. # 19, Exhibit 5, pages 1 and 2).  This court notes that petitioner's conviction for first degree assault, an alternative charge was vacated at sentencing.  (Dkt. # 19, Exhibit 5. Page 8).

Petitioner appealed the conviction and raised the following issues:

1. Whether Thol's conviction should be reversed and the matter dismissed with prejudice where the trial was continued because of the unavailability of the State's unsubpoenaed witness and commenced beyond the speedy trial time limit over Thol's objection? (Assignments of Error # 1 and 2).

2. Whether Thol's conviction should be reversed because the State's actions in failing to timely provide discovery deprived Thol of his right to effective representation by fully prepared counsel? (Assignment of Error # 3).

3. Whether Thol's conviction should be dismissed with prejudice for prosecutorial mismanagement in that Thol was presented with an untenable Hobson's choice where his case was continued beyond the speedy trial time limit due to the unavailability of the State's unsubponaed witness over his objection compounded by the State's actions in failing to timely provide discovery? (Assignment of Error # 4).

4. Whether Thol's conviction should be reversed based on the trial court's unconstitutional comment on the evidence and violation of the appearance of fairness doctrine in giving the jury an instruction on accomplice liability and to-convict instructions prior to the jury hearing the evidence in the case? (Assignment of Error # 5).

5. Whether the trial court denied Tho's constitutional right to confront witnesses under <u>Bruton</u> and <u>Gray</u> by admitting statements of non-testifying co-defendants? (Assignment of Error #6).

6. Whether the trial court erred in admitting statements of non-testifying co-defendants as statements in furtherance of a conspiracy without first requiring the State to demonstrate the existence of a conspiracy, and when the hearing on the existence of a conspiracy was held the court erred in finding a conspiracy base on the hearsay statements at issue? (Assignments of Error # 7 and 8).

7. Whether the trial court erred in admitting expert testimony regarding gang affiliation when evidence of gang affiliation was not necessary to prove any

REPORT AND RECOMMENDATION - 2

material issue at trial? (Assignment of Error #9).

8. Whether the facts contained in the affidavit in support of the State's motion to compel photographs of Thol's alleged gang tattoos did not establish probably cause to warrant such an intrusion into the privacy of his person? (Assignment of Error # 10).

9. Whether the trial court erred in allowing Thol's former co-defendants who had pleaded guilty to testify against him prior to their sentencings over his objection where the plea agreements entered by these former co-defendants and the State did not require the former co-defendants to testify truthfully? (Assignment of Error # 11).

10. Whether Thol was prejudiced as a result of his counsel's failure to properly preserve the issues presented in this brief? (Assignment of Error # 12).

11. Whether the cumulative effect of the errors materially affected the outcome of the trial even if none of the errors discussed alone warrant reversal? (Assignment of Error # 13).

(Dkt. # 19, Exhibit 2, at 1-4).  Petitioner filed a pro se brief raising the following issues:

1. Accomplice liability requires that the defendant have general knowledge of his co-participant's substantive crime, and he must seek to assist in the commission of that crime. Instruction 19, however, which is based on the current version of WPIC 10.51, allowed the jury to convict Mr. Thol if it found that he was participating in any crime. In a recent case, the Division One Court Of Appeals found that a similar instruction misstated the law and required reversal. Is instruction 19 erroneous? (Assignment of Error No. 1).

2. In light of this instruction, which relieved the State of its burden to prove every element of the charged offenses, is reversal automatic or subject to a harmless error analysis? (Assignment of Error No. 1).

(Dkt. # 19, Exhibit 3, page1).  The state court of appeals affirmed the conviction and sentence.

(Dkt. # 19, Exhibit 5).  Petitioner filed for discretionary review and raised the following issues:

1. At petitioner's trial for attempted murder, his jury was given an accomplice instruction that misstates the law under this Court's decisions in State v. Roberts and State v. Cronin. The prosecutor took advantage of this misstatement when asking the jury to find petitioner guilty based on his participation in any criminal activity, including activity that occurred after the charged incident. Does petitioner's conviction violate due process?

2. Did the court of appeals misapply the applicable standards in finding that this due process violation was harmless?

3. Whether petitioner's conviction should be reversed based on a violation of his right to a speed trial.

4. Whether petitioner was denied his Sixth Amendment right to effective representation because the state failed to timely comply with its discovery

REPORT AND RECOMMENDATION - 3

        obligations.

5. Whether prosecutorial mismanagement denied petitioner his right to due process.

6. Whether the trial court commented on the evidence in violation of article 4, § 16 of Washington's Constitution.

7. Whether petitioner was denied his Sixth Amendment right to confront the witnesses against him when the trial court admitted statements of non-testifying co-defendants and other hearsay.

8. Whether the court erred when it admitted gang affiliation evidence.

9. Whether the trial court violated petitioner's Fourth Amendment rights when it required him to submit to photographs of his tattoos.

10. Whether petitioner's due process rights were violated when the court permitted co-defendant's to testify against him.

(Dkt. # 19, Exhibit 8, pages 1 through 3). The state supreme court denied review. (Dkt # 19, Exhibit 9).

Petitioner filed a personal restraint petition in the state supreme court and raised the following issues:

1. The petitioner was denied the Fifth Amendment to the U.S. Constitution right of due process when the prosecutor vouched for the credibility of witnesses.

2. The petitioner was denied the Fifth Amendment of the U.S. Constitution right of Due Process when the trial court denied Thol of his proposed lesser included offense of assault in the second degree.

3. The petitioner was denied the Fifth and Fourteenth Amendments of the U.S. Constitution right of Due Process when the accomplice liability instruction relieved the state of its burden to prove every element of the charged offense.

4. The petitioner was denied the Fifth and Sixth Amendments of the U.S. Constitution right of due process and a speedy public trial when the trial was continued because of the unavailability of an unsubponaed witness and commenced beyond the speedy trial time limit over petitioner's objection.

5. The petitioner was denied the Fifth and Sixth Amendments of the U.S. Constitution right to due process and to effective assistance of counsel by a fully prepared trial counsel when the state's actions in failing to timely provide discovery.

6. The petitioner was denied the Fifth Amendment of the U.S. Constitution right to due process when petitioner conviction should be dismissed with prejudice for prosecutorial mismanagement in that petitioner was presented with an untenable Hobson's choice where his case was continued beyond the speedy

REPORT AND RECOMMENDATION - 4

|   |     |   |
|---|-----|---|
| | | trial time limit due to the unavailability of the state's unsubpoenaed witness over his objection compounded by the prosecutor's actions in failing to timely provide discovery. |
| | 7. | The petitioner was denied the Fifth and Sixth Amendments of the U.S. Constitution right when the trial court comment on the evidence and in violation of the appearance of fairness doctrine in giving the jury an instruction on accomplice liability and to-convict instructions prior to the jury hearing the evidence of the case. |
| | 8. | The petitioner was denied the Sixth Amendment of the U.S. Constitution right to confront witnesses under Gray by admitting statements of non-testifying co-defendants. |
| | 9. | The petitioner was denied the Fifth, and Sixth Amendments of the U.S. Constitution right of due process and confrontation when the trial court admitted statements of non-testifying co-defendants as statement in furtherance of conspiracy, without first requiring the state to demonstrate the existence of a conspiracy when the hearing on the existence of a conspiracy was held on the existence of a conspiracy was held the court erred in finding a conspiracy based on the hearsay statements at issue. |
| | 10. | The petitioner was denied the First and Fourteenth Amendments of the U.S. Constitution right to freedom of association and due process when the trial court erred in admitting expert testimony regarding gang affiliation when evidence of gang affiliation was not necessary to prove any material issue at trial. |
| | 11. | The petitioner was denied the Fourth Amendments of the U.S. Constitution right that protects inspections of privacy when the facts contained in the affidavit in support of the motion to compel photographs of alleged gang tattoos did not establish probable cause to warrant an intrusion into the privacy of his person. |
| | 12. | The petitioner was denied the Fifth Amendments of the U.S. Constitution right of due process when the trial court allowed petitioner's former co-defendants who had pleaded guilty to testify against him prior to their sentencings over his objection where the plea agreements entered by these former co-defendants and the state did not require the former co-defendants to testify truthfully. |
| | 13. | The petitioner was denied the Sixth Amendment of the U.S. Constitution right of effective assistance of counsel when his counsel's failure to properly preserve the issues presented in the brief. |
| | 14. | The petitioner was denied the Fifth Amendment of the U.S. Constitution right of due process because even if none of the errors discussed above warrant reversal of the petitioner's conviction, the cumulative effect of these errors materially affected the outcome of the trial and his conviction should be reversed. |

(Dkt. # 19, Exhibit 10, pages 3 to 5). The petition was transferred to the state court of appeals and

REPORT AND RECOMMENDATION - 5

subsequently dismissed. (Dkt. # 19, Exhibit 12). Petitioner filed for discretionary review and raised the following issues:

    1. Did the trial court erred in admitting statements of non-testifying co-defendants and other hearsay in violation of his right under the state and federal constitutions.?

    2. Did the trial court erred in denying petitioner his proposed lesser included offense of assault in the second degree which violated petitioner's constitutional right of due process?

    3. Did the state denied petitioner a fair trial and due process of law by vouching for the credibility of its witnesses?

    4. Did the trial court erred in admitting expert testimony regarding gang affiliation denied petitioner a fair trial?

    5. Did the cumulation of all the previously alleged errors deny petitioner a fair trial?

(Dkt. # 19, Exhibit 13, page 1). The state supreme court denied review. (Dkt. # 19, Exhibit 14).

This petition followed and the only issue raised is that the use of an erroneous accomplice liability instruction mandates reversal. (Dkt. # 1). Respondent contends this issue is procedurally barred not subject to review. (Dkt. # 18). In the alternative the respondent addresses the merits of the claim.

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty

REPORT AND RECOMMENDATION - 6

of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

1.   Procedural Barr.

For procedural bar to occur a petitioner must fail to raise an issue at each stage of state review and thereby fail to exhaust that issue. If the states procedural rules prevent the petitioner from returning to state court or filing another petition and exhausting that issue the issue cannot be raised in federal court and is procedurally barred.

Here, petitioner raised the issue regarding the accomplice jury instruction on direct review. (Dkt # 19, Exhibit 3). The court of appeals ruled on the issue on the merits and the state supreme court refused to accept review even though the issue was again raised. (Dkt # 19, Exhibits 8 and 9). Thus, petitioner exhausted the issue. The fact that the state court of appeals refused to consider the

REPORT AND RECOMMENDATION - 7

issue when it was raised in a subsequent personal restraint petition is irrelevant. The issue raised in this petition is not procedurally barred and was exhausted on direct review.

    2.    <u>On the merits</u>.

The court of appeals considered the jury instruction issue now before the court and held:

> I. ACCOMPLICE LIABILITY INSTRUCTION: HARMLESS ERROR
>
>     Appellants contend that their convictions must be reversed because the court misinstructed the jury on element of the offense by giving an instruction declared infirm in *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 717 (2000). We hold that the court's accomplice liability instruction, if error, was harmless and affirm.
>
>     We assume, without deciding, that the reference to a *crime* in the initial paragraph of the accomplice liability instruction given here was erroneous. *See* [7] *Roberts*, 142 Wn.2d 471; *State v. Cronin*, 142 Wn.2d 568, 14 P.3d 752 (2000). But because the record demonstrates conclusively that such error could not have materially affected the jury's deliberations in this case, we hold that it was harmless beyond a reasonable doubt.
>
>     "The complicity rule in Washington is that any person who participates in the commission of the crime is guilty of the crime and is charged as a principal." *State v. Silva-Baltazar,* 125 Wn.2d 472, 480, 866 P.2d 138 (1994). Thus, an information which charges an accused as a principal adequately apprises him or her of potential accomplice liability even though the information does not expressly charge aiding or abetting or refer to other persons. *State v. Davenport*, 100 Wn.2d 757, 764-65, 675 P.2d 1213 (1984); *State v. Rodriguez*, 78 Wn. App. 769, 774, 899 P.2d 871 (1995), *review denied*, 128 Wn.2d 1015 (1996). Aiding and abetting the commission of a crime is not a method or mode of committing that crime, and the elements of the offense remain the same whether the defendant is alleged to have acted as a principal or an accomplice. *State v. Carothers*, 84 Wn.2d 256, 262, 525 P.2d 731 (1974), *cited with approval in State v. Wixon*, 30 Wn. App. 63, 76, 631 P.2d 1033, *review denied*, 96 Wn.2d 1012 (1981).[8] In *Carothers*, our Supreme Court held,

---

[7] Both the *Roberts* and the *Cronin* opinions set out the text of instruction number 7 given at their respective trials. The instructions are not identical. The instruction given in *Cronin* was identical to 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 157 (2d. ed. 1994) (WPIC 1051). Under WPIC 10.51, the defendant, knowing that he was facilitating the commission of *a crime*, could be found guilty if the jury found he solicited *the crime* or aided, planned or committed *a crime*. The instruction here is identical to that given in *Roberts*. Here, the jury was required to find that the defendant, knowing that he was facilitating the commission of *a crime* solicited…*the crime* or aided, planned or committed *the crime*. (Footnote in the text).

[8] We note that *Carothers* was disapproved of on other grounds by *State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984) overruled on other grounds by *State v. Brown*, 111 Wn. 2d 124,

REPORT AND RECOMMENDATION - 8

> The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principle, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands ready to help the assailant, or aids in some other way, he is a participant. *The elements of the crime remain the same.*

*Carothers,* 84 Wn.2d at 264 (emphasis added).

After *Carothers*, the legislature enacted the accomplice statute at issue here. "By enacting RCW 9A.08.020(1) and (2)(c), the legislature made more explicit its intent discerned by the court in *State v. Carothers, supra*, which had been based on its interpretation of a predecessor statute, RCW 9.01.030." *State v. Williams*, 28 Wn, App. 209, 213, 622 P.2d 885, *review denied*, 95 Wn.2d 1024 (1981). In an accomplice liability context, aiding and abetting is neither an element nor a method of committing a crime. *Williams*, 28 Wn. App. At 213. *See also State v. Teaford*, 31 Wn. App. 496, 500, 644 P.2d 136, *review denied*, 97 Wn.2d 1026 (1982) (defendant's status as an accomplice was not an element of either of the principal crimes).

Here, the jury was instructed on the elements of first degree attempted murder as follows:

> To convict the defendant, [named], of the crime of Attempted Murder in the First Degree as charged in cause [number], each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 3rd of day of March, 1997, the defendant, or one with whom he was an accomplice, did an act which was a substantial step toward the commission of Murder in the First Degree;
>
> (2) That the act was done with the intent to commit Murder in the First Degree;
>
>     a)    that the act was done with the intent to cause the death of Bun Sean Vath; and
>
>     b)    that the intent to cause the death of Bun Sean Vath was premeditated; and
>
> (3) That the acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be

---

761 P.2d 588 (1988).(footnote in text).

REPORT AND RECOMMENDATION - 9

your duty to return a verdict of not guilty.

Clerk's Papers (Trujillo) at 377; (Angel) at 340; (Thol) at 325; (Veth) at 424.

A separate definitional instruction defined the term *accomplice*, as used in each of the "to convict" or "elements" instructions, as follows:

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of *a crime*, he or she either:

(1)   solicits, commands, encourages, or requests another person to commit the crime; or

(2)   aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime.

However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (Trujillo) at 369 (emphasis added).

Misinstructing the jury on an element of an offense has been held to be automatic reversible error. *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997) (jury instructed on the element of "conspiracy to commit murder" when the proper element was "murder"). *But see Neder v. U.S.*, 527 U.S. 1, 10, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (omission of an element from a jury instruction is subject to harmless error analysis; *State v. Jennings*, 111 Wn. App. 54, 44 P.3d 1 (2002) (faulty jury instruction regarding display of weapon in robbery trial held to be harmless error). But an error in an instruction that defines a term used in the elements instruction may be harmless and its use is subject to harmless error analysis.[9]

---

[9]   *See e.g. State v. Handran*, 113 Wn.2d 11, 16, 775 P.2d 453 (1989) (failure to define underlying crime harmless when there is no borderline legal conduct that might be judged criminal); *State v. Brenner*, 53 Wn. App. 367, 378-79 768 P. 2d 509, *review denied*, 112 wn.2d 10120 (1989) (failure to define "building" harmless error where additional fended area constituted "building" as a matter of law). *See also State v. Bailey*, 114 Wn.2d 340, 348-49, 787 P.2d 1378 (1990) (absence of nonmarriage element harmless error where indecent liberties victim was three years old.) (Footnote in the text).e

REPORT AND RECOMMENDATION - 10

      In 1980, our state Supreme Court declared defective a pattern instruction defining the mens rea element of "knowledge." As a definitional instruction, it was not an element and the Supreme Court applied a harmless error test. *State v. Shipp*, 93 Wn.2d 510, 518, 610 P.2d 1322 (1980), *cited with approval in State v. Wheeler*, 95 Wn.2d 799, 808, 631 P.2d 376 (1981) (inclusion of ambiguous definition of "knowledge" instruction was harmless where jury, by finding act was intentional, found, as a matter of law, that act was knowing).

      Assuming, without holding, that the error in the instruction defining accomplice liability is one of constitutional magnitude, we find this record demonstrates that the instruction could not have misled the jury and that it was harmless beyond a reasonable doubt.[10]

      Accomplice liability does not necessarily attach to all crimes committed by the principal. "The Legislature…intended the culpability of an accomplice not extend beyond the crimes of which the accomplice actually has "knowledge"…." *Roberts*, 142 Wn.2d at 511. "[The] individual must have acted with knowledge that he or she was promoting…*the* crime for which that individual was eventually charged." *Cronin*, 142 Wn.2d at 579. To hold an individual liable as an accomplice, the State must prove that a person who solicits the commission of *the crime* or aids in the planning or committing of *the* offense necessarily had knowledge of it. The record before us conclusively establishes such knowledge.[11]

      Appellants Angel, Thol, Veth, and Kong argue that the faulty accomplice liability instruction relieved the State of its burden to prove an essential element of the crime.

      ...

      Review of the record establishes that the instruction defining an accomplice, if error, was harmless beyond a reasonable doubt for all six co-defendants, five of whom were principals.[12] **From the evidence at trial, any jury would reasonably conclude**

---

[10] To overcome a general bar to review of an issue first raised on appeal, the court must determine whether the error is one of constitutional magnitude. *State v. Scott*, 110 Wn.2d 682, 684-85, 757 P.2d 493 (1988). An error of constitutional magnitude in a criminal prosecution is harmless if the reviewing court is convinced beyond a reasonable doubt that the evidence not tainted by the error is, by itself, so overwhelming that it necessarily leads to a finding of guilt. *State v. St. Pierre*, 111 Wn.2d 105, 119, 759 P.2d 383 (1988). The State bears the burden of showing a constitutional error was harmless. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). (Footnote in the text).

[11] We not also that the State never argued that the appellants could be convicted of the offenses charged if they had knowledge of or participated in a lesser offense. (Footnote in the text).

[12] In addition to the facts set forth above, the record contains the following details concerning the five principals, Angel, Veth, Thol, Kong, and Trujillo:
.....
Thol; Davenport transported Thol to the police station after arresting him in the van. During a routine post-transport search of the vehicle, Davenport

REPORT AND RECOMMENDATION - 11

> **that Angel, Veth, Thol, Kong, and Trujillo were principals and that their intent was to shoot and kill Vath. Unlike the spontaneous rival gunfight involved in Bui, the defendant in the Cronin companion case, appellants, here, recruited (or were recruited), organized, planned, and attempted to kill Vath, most believing him to be a rival gang member. All but Krouch were principals and the State was not relieved of its burden to prove any element of the crime beyond a reasonable doubt.**
>
> Angel, Thol, and Veth each individually committed all of the required elements of the two crimes charged. They shot at Vath intending to kill him. They committed the assault and, because it was premeditated, the attempted murder. The accomplice liability jury instruction, if error, had no affect on the outcome of their cases....
>
> Finding no reversible error in the accomplice liability instruction, we affirm the attempted murder and first degree assault conviction of Trujillo, Angel, Thol, and Veth . . .

(Dkt. # 19, Exhibit 5, pages 9 to 17)(emphasis added).

Claims asserting jury instruction error are cognizable in a federal habeas corpus proceeding only if the complained-of instruction, viewed in context of the entire trial, so infected the trial that the conviction violates a right guaranteed under the Fourteenth Amendment. Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396 (1973). The petitioner must establish that there was a reasonable likelihood that the jury applied the instructions in a way that violated a constitutional right. Carriger v. Lewis, 971 F.2d 329, 334 (9th Cir. 1992). Petitioner has failed to make that showing and failed to show the ruling of the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Further, petitioner has failed to show the state court ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. The state court of appeals cited to circumstantial evidence in the record that petitioner hid a half full .45 caliber Sig Sauer magazine in the patrol car when he was transported from the van he was traveling in to the police station. (Dkt. # 19, Exhibit 5, page 14, footnote 12). At the time of his arrest

---

> found "a .45 caliber Sig Sauer magazine, and it had four live .45 caliber rounds, some type of hollow point rounds, loaded into the magazine laying on the floorboard." Report of Proceedings (Vol. VIB, 56/18/97) at 745. Five .45 caliber shell casings and four .45 caliber bullet holes were found at Vath's home during the investigation…(Footnote in the text).

REPORT AND RECOMMENDATION - 12

petitioner was traveling in a van with other defendants and wearing a red hooded sweat shirt. Witnesses noted the shooter to be wearing a red shirt. A .45 caliber Sig Sauer pistol was later found in searching the van petitioner had been traveling in. From that evidence it may be inferred that petitioner was armed with the .45 caliber weapon at the time of the shooting and fired shots from that pistol. This implication is further corroborated by the evidence at trial that five .45 caliber casings were found at the scene of the crime and there were four .45 caliber bullet holes in the house. (Dkt. # 19, Exhibit 5, page 14, footnote 12). Petitioner's claim is without merit and this petition should be **DISMISSED**.

## CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH PREJUDICE.** A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 6th, 2006**, as noted in the caption.

DATED this 20th day of December, 2005.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13